# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE CIGNA-AMERICAN SPECIALTY HEALTH ADMINISTRATIVE FEE LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS<br><br>CAROL LIETZ, *et al.*, *on behalf of themselves and all others similarly situated*,<br><br>KATHLEEN KILROY, *et al.*, *on behalf of themselves and all others similarly situated*,<br><br>JIANLIANG ZHU, *et al.*, *on behalf of themselves and all others similarly situated*,<br><br>         Plaintiffs,<br><br>   v.<br><br>CIGNA CORPORATION; CONNECTICUT GENERAL LIFE INSURANCE COMPANY; CIGNA HEALTH AND LIFE INSURANCE COMPANY; AMERICAN SPECIALTY HEALTH INCORPORATED; AND AMERICAN SPECIALTY HEALTH GROUP, INC.,<br><br>         Defendants. | Case No. 2:16-cv-03967-NIQA |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND .................................................................................................2

    A.  Summary of Plaintiffs' Claims ..................................................................2

    B.  The Litigation.............................................................................................3

    C.  Settlement Negotiations .............................................................................5

    D.  The Terms of the Settlement......................................................................5

    E.  Preliminary Approval and Class Notice ....................................................6

III.  ARGUMENT .......................................................................................................6

    A.  The Settlement is Fair, Reasonable, and Adequate, and Should be Approved........6

    B.  The Settlement Meets Each of the *Girsh* Factors ....................................8

        1.  The Complexity, Expense, and Duration of Continued Litigation .............8

        2.  The Reaction of the Class to the Settlement ...............................10

        3.  The Stage of the Proceedings.......................................................11

        4.  The Risks of Establishing Liability..............................................12

        5.  The Risks of Establishing Damages .............................................13

        6.  The Risks of Maintaining the Class Action through Trial.........................13

        7.  Defendants' Ability to Withstand Greater Judgment................................14

        8.  Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation ................14

    C.  The Relevant Prudential and Baby Products Factors Also Support Settlement ....16

IV.  THE NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND FULLY IMPLEMENTED ...............................................................17

V.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED...............................19

    A.  The Rule 23(a) Factors Are Me ...............................................................20

        1.  Numerosity...................................................................................20

2. Commonality............................................................................21

3. Typicality...............................................................................21

4. Adequacy................................................................................22

B. The Rule 23(b)(3) Factors Are Met ................................................23

1. Predominance..........................................................................23

2. Superiority..............................................................................24

VI. CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*,
   625 F. App'x 169 (3d Cir. 2015) .......................................................................3

*Amchem Prods. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231 (1997).............................................20, 22, 23, 24

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013)....................................................................................23

*In re Baby Products Antitrust Litigation*,
   708 F.3d 163 (3d Cir. 2013)........................................................................16, 17

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993)...............................................................................10

*Brown v. Am. Home Prods. Corp. (In re Diet Drugs (Phentermine, Fenfluramine,
   Dexfenfluramine) Prods. Liab. Litig.)*,
   No. 99-20593, 2000 U.S. Dist. LEXIS 12275 (E.D. Pa. Aug. 28, 2000) ...............12

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)...........................................................8, 10, 12, 13

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
   269 F.R.D. 468 (E.D. Pa. 2010).........................................................................14

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg.
   Loan Litig.*,
   418 F.3d 277 (3d Cir. 2005).......................................................................19, 23

*Devlin v. Ferrandino & Son, Inc.*,
   No. 15-4976, 2016 U.S. Dist. LEXIS 170823 (E.D. Pa. Dec. 9, 2016)................6, 7

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010)...............................................................................7

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (U.S. 1974)..................................................................................19

*Fayuelle v. Cigna Corp*,
   15-cv-01581-JLK (D. Colo.).................................................................................4

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir.1995)........................................................................ *passim*

*Gillis v. Respond Power, LLC*,
   677 F. App'x 752 (3d Cir. 2017) .......................................................................20

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ..................................................................... *passim*

*Hall v. AT&T Mobility LLC*,
   2010 WL 4053547 (D.N.J. Oct. 13, 2010) ..........................................................9

*High Street Rehabilitation, LLC, et al. v. American Specialty Health Inc. et al.*,
   No. 2:12-cv-07243 (E.D. Pa.) .........................................................................3, 4

*Jackson v. Wells Fargo Bank, N.A.*,
   136 F. Supp. 3d 687 (W.D. Pa. 2015) ..................................................................9

*Johnston v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001) .........................................................................21, 22

*Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice*
   *Litig. Agent Actions)*,
   148 F.3d 283 (3d Cir. 1998) ....................................................................... *passim*

*McDonough v. Toys R. Us, Inc.*,
   80 F. Supp. 3d 626, 650-51 (E.D. Pa. 2015) .....................................................17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ...........................................................................................17

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   No. 06-0620, 2018 U.S. Dist. LEXIS 211488 (E.D. Pa. Dec. 17, 2018) ........7, 8, 9

*In re N.J. Tax Sales Certificate Antitrust Litig.*,
   750 F. App'x 73 (3d Cir. 2018) ...........................................................................8

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ..............................................................................22

*In re Pet Food*,
   629 F.3d at 350 .................................................................................................16

*Phillips Petroleum Co. v. Schutts*,
   472 U.S. 797 (1985) .....................................................................................17, 25

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ...............................................................11, 19, 20

*Reyes v. Netdeposit, LLC*,
   802 F.3d 469 (3d Cir. 2015) ..............................................................................21

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013).................................................................21

*Skeen v. BMW of N. Am., Ltd. Liab. Co.*,
    No. 2:13-cv-1531-WHW-CLW, 2016 U.S. Dist. LEXIS 97188 (D.N.J. July
    26, 2016) ...........................................................................................13

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001).................................................................20

*Stoetzner v. U. S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990).................................................................10

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)...................................................................7

*Wallace v. Powell*,
    288 F.R.D. 347 (M.D. Pa. 2012)..........................................................12

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002), *aff'd* 391 F.3d 516 (3d Cir. 2004).........................13

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)........................................................ *passim*

## **STATUTES**

28 U.S.C. § 1715..................................................................................18

## **OTHER AUTHORITIES**

Fed. R. Civ. P. 23 *et seq.*....................................................... *passim*

Manual For Complex Litigation, Fourth § 21.312 (2004)....................................18

## I.     INTRODUCTION

On April 8, 2019, this Court entered an order granting preliminary approval of the Settlement Agreement and Release[1] ("Settlement") between Plaintiffs Carol Lietz, Kathleen Kilroy, Jianliang Zhu and Joyce Allen (collectively "Lead Plaintiffs") and Defendants Cigna Corporation, Connecticut General Life Insurance Company, and Cigna Health and Life Insurance Company (together, "Cigna"), and American Specialty Health Incorporated and American Specialty Health Group, Inc. (together, "ASH," and together with Cigna, "Defendants"). *See* ECF No. 90 (the "Preliminary Approval Order"). In the Preliminary Approval Order, the Court also conditionally certified the following class for settlement purposes:

> Collectively, any Plan Member[2] whose Plan benefits and/or cost share under a Plan were determined based on ASH's charges to Cigna through the Final Approval Date for the following types of services: chiropractic, acupuncture, massage therapy, naturopathy, physical therapy, or occupational therapy (the "Settlement Class" or "Class").

*See* ECF No. 90 at 4. In the Preliminary Approval Order, the Court also made the preliminarily determination that the Settlement—a hard-fought compromise that was the culmination of adversarial, arms'-length negotiations following extensive litigation—falls "within the range of reasonableness" and "appears sufficiently fair, reasonable, and adequate." Preliminary Approval Order at 4-5.

---

[1] The Parties' Settlement Agreement and Release is attached as Exhibit 1 to the March 26, 2019 Declaration of Steven A. Schwartz in Support of Motion for Preliminary Approval of Class Action Settlement, and was previously filed with the Court. (ECF 87-1.) The Court has also entered a Stipulation and Order Amending Clerical Errors in the Preliminary Approval Order and Settlement Agreement (ECF 92). All capitalized terms therein have the same meaning as set forth in the Agreement.

[2] A "Plan Member" is a member of a Cigna-administered health insurance plan subject to ERISA (a "Plan").

1

In light of the overwhelmingly favorable reaction of the Class, the benefits made available by the Settlement, and in order to avoid the burden, expense, inconvenience, and uncertainty of continued litigation, Plaintiffs now ask the Court to grant final approval to the Settlement. It is in the best interest of the Class to resolve and settle this litigation. Tellingly, although there are more than 1.5 million Settlement Class Members who received direct mail advising them of the settlement and its key terms, **to date there are no objections and 11 requests for exclusion.**[3]   Accordingly, this Court should grant final approval to the Settlement and direct that the benefits be provided to the Class.

## II.   BACKGROUND

Plaintiffs detailed the facts giving rise to their claims and Defendants' defenses in the papers they submitted in connection with Preliminary Approval. Those facts are referenced again below only to the extent that they are pertinent to the issues raised in this Memorandum. The Settlement was reached after extensive discovery, hard-fought litigation, and a lengthy negotiation between experienced and informed counsel with the assistance of a highly-regarded mediator, David Geronemus of JAMS.[4]   Plaintiffs and Class Counsel—based upon their evaluation of the facts, applicable law, and their recognition of the substantial risk and expense of continued litigation—believe this Settlement to be fair, adequate and reasonable and submit that it is in the best interests of the Class.

### A.   Summary of Plaintiffs' Claims

Lead Plaintiffs Ms. Lietz, Ms. Kilroy, Mr. Zhu, and Ms. Allen are patients insured by ERISA plans that are administered by Cigna. Lead Plaintiffs allege that Cigna and its subcontractor, ASH, violated the written terms of those plans and ERISA by treating ASH's

---

[3] The deadline for objections and opt outs and objections is July 10, 2019.
[4] https://www.jamsadr.com/geronemus/

administrative fees as medical expenses to artificially inflate the amount of "benefits" owed by plans and the cost-sharing obligations of plan participants and beneficiaries.

Employers hire Cigna to manage their health benefits plans, including to provide their employees and their employees' covered dependents ("plan customers") with access to Cigna's networks of healthcare providers known as "participating" providers. Cigna serves as a claims administrator with responsibility for processing and adjudicating claims. Cigna hired ASH to contract with medical providers to participate in Cigna's network and administer claims for chiropractic, physical therapy, acupuncture, naturopathy, occupational therapy, and massage therapy services. Plaintiffs allege that even though Cigna had already contracted with its various plan sponsor customers to perform these functions in exchange for a set administrative fee, Cigna was unwilling to pay ASH for doing its work. Instead, Plaintiffs allege that Cigna and ASH colluded to ignore language in the written plan documents stating that medical charges, not administrative fees of Cigna's subcontractor, are the charges upon which benefit payments and patient cost-share obligations (*e.g.*, co-insurance) are supposed to be based. Plaintiffs further alleged that Defendants treated ASH's charges as medical claims, and then forced Cigna's members to unknowingly bear those costs as part of their member responsibility for claims.

### B.    The Litigation

The case has been vigorously litigated for more than seven years. Ms. Lietz initially brought her claims in the Eastern District of Pennsylvania as part of *High Street Rehabilitation, LLC, et al. v. American Specialty Health Inc. et al.*, No. 2:12-cv-07243 (E.D. Pa.). Defendants filed motions to dismiss, which this Court granted. Ms. Lietz appealed the dismissal, and the Third Circuit reversed. *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169 (3d Cir. 2015). Following the reversal, Ms. Lietz dismissed her claims and brought them as part of a separate case filed in November 2015 related to Cigna's administrative fees claims in the

District of Colorado. That case was originally styled *Fayuelle v. Cigna Corp*, 15-cv-01581-JLK (D. Colo.). Both Cigna and ASH again filed motions to dismiss, which after extensive briefing, the court granted in part and denied in part, leaving only Ms. Lietz's claims. In July 2016, the *Lietz* Action was transferred to this Court and coordinated with *High Street* for discovery purposes. The parties engaged in extensive document and data discovery in the *Lietz* Action for nearly two years, including the following:

- Responses to extensive sets of document requests and interrogatories;

- Negotiation of a Protective Order (including special provisions to protect class members' medical information  to ensure compliance with HIPAA);

- Negotiation of ESI and Claims Sampling Protocols approved by the Court;

- Production of over 200,000 documents representing over 1.5 million pages;

- Productions of multiple databases and claims samples from Cigna and ASH representing over 500 gigabytes of data;

- Intensive negotiations over various document, data production, and other discovery issues, including numerous telephone conferences and email exchanges; exchange of over 100 letters; and numerous meet and confers regarding various disputes;

- Extensive work by database experts to sync the various Cigna and ASH databases in order to evaluate liability and damages issues;

- The preparation of a comprehensive deposition and "trial map" synthesizing the analysis of all documents and information produced by the parties and obtained via Class Counsel's continuing investigation; and

- Preparation for depositions.

Declaration of Steven A. Schwartz in Support of Plaintiffs' Motion for Final Approval of the Settlement ("Schwartz FA Decl."), ¶9.

The related *Kilroy* and *Zhu* Actions were filed on April 13, 2018 and May 23, 2018, respectively. Defendants moved to dismiss both of those cases. Plaintiffs filed a 35-page opposition in the *Kilroy* Action and a 37-page opposition in the *Zhu* Action. Defendants' motions

to dismiss those complaints were pending as of the date of the Settlement. As part of the Settlement, Class Counsel filed an Amended Complaint consolidating *Lietz*, *Kilroy*, and *Zhu* under the *Lietz* docket number and restyling the caption as *In re Cigna-American Specialty Health Administrative Fee Litigation*.

### C.    Settlement Negotiations

On November 13, 2018, the parties participated in a mediation session before David Geronemus, Esq. of JAMS. In connection with the mediation, the parties exchanged extensive mediation briefs that set forth the legal and factual bases (with citations to documents and expert analyses of data produced by Defendants) related to the parties' respective claims and defenses. After extensive negotiations that lasted until about midnight, the parties reached an agreement to settle Settlement Class Members' claims for $8.25 million plus a commitment from Defendants to take reasonable steps to implement certain business reforms.

### D.    The Terms of the Settlement

The Settlement, the full terms of which are set forth in the Settlement Agreement, provides substantial economic benefits to the Class. The Settlement creates a total settlement fund of $8.25 million. Based on Lead Counsel's analysis of Defendants' existing data production, under the proposed *pro rata* Plan of Allocation, even after deduction of attorneys' fees and administration expenses, Settlement Class Members who made out-of-pocket payments towards Administrative Fees will automatically be mailed checks that, on average, represent a full or near-full recovery of the actual amounts they paid. Schwartz FA Decl., ¶ 12. The Settlement also requires Cigna to make reasonable efforts to enact certain business reforms related to the conduct challenged by Plaintiffs. These business reforms are designed such that Cigna will provide more disclosure about how it calculates benefits and plan member cost-

sharing responsibility for entities such as ASH. In consideration of these settlement benefits, Defendants will receive a carefully tailored mutual release of all claims between the parties.

Importantly, Defendants will be ordered to pay the Settlement Class benefits automatically; the Settlement Class Members who made out-of-pocket payments towards Administrative Fees will not need to file a claim or take any other steps to receive the payments due to them under the Settlement. In short, the Settlement provides $8.25 million in non-speculative, substantial relief to Settlement Class Members without the need for a claims process or eligibility determination.

### E.    Preliminary Approval and Class Notice

On April 8, 2019, the Court granted preliminary approval to the proposed Settlement. Pursuant to the Court's Order, A.B. Data sent notice to the relevant governmental officials  under CAFA, effected publication notice, and sent direct postcard notice  to Settlement Class Members in accordance with the plan for Notice, which this Court found to be the "best notice practicable under the circumstances," and consistent with the requirements of due process. Preliminary Approval Order at 6. The Declaration of AB Data Vice President Eric Schachter ("Schachter Decl."), filed concurrently herewith, discusses in detail the implementation of this Notice Plan and dissemination of the Class Notice. Notice was mailed to over 1.5 million Settlement Class Members. *Id*, ¶¶ 5-9.  As already noted, no objections were filed and only 11 Settlement Class Members opted-out of the Settlement. *Id*.  Both Class Counsel and AB Data followed up with all Settlement Class Members who made inquiries or had questions. *Id*.; Schwartz FA Decl., ¶ 11.

## III.   ARGUMENT

### A.    The Settlement is Fair, Reasonable, and Adequate, and Should be Approved

Rule 23(e) requires a determination by the district court that the proposed settlement is "fair, reasonable and adequate." *Devlin v. Ferrandino & Son, Inc*., No. 15-4976, 2016 U.S. Dist.

LEXIS 170823, at *7 (E.D. Pa. Dec. 9, 2016) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 295 (3d Cir. 2011). "[T]here is a strong judicial policy in favor of voluntary settlement agreements," and "[t]he law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Id.* In *Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010), the Third Circuit held:

> This presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings …. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts [and] the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

609 F.3d at 594-95 (internal citations omitted).

Settlements enjoy a presumption that they are fair and reasonable when they are the product of arms'-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *See, e.g.*, *Sullivan v. DB Invs.*, 667 F.3d 273, 320 (3d Cir. 2011) (en banc); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2018 U.S. Dist. LEXIS 211488, at *19 (E.D. Pa. Dec. 17, 2018) ("class action settlements are … entitled to a presumption of fairness when four factors are met: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.").

> To determine whether a class action settlement meets these standards, courts in this circuit employ the test set forth in *Girsh v. Jepson*,[5] which requires consideration of the following factors: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

---

[5] 521 F.2d 153 (3d Cir. 1975).

> establishing liability; (5) the risks of establishing damages; (6) the risks of
> maintaining the class action through trial; (7) the ability of the defendants to
> withstand a greater judgment; (8) the range of reasonableness of the settlement
> fund in light of the best possible recovery; and (9) the range of reasonableness of
> the settlement fund to a possible recovery in light of all the attendant risks of
> litigation.

*In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018). "A court

may approve a settlement even if it does not find that each of [the *Girsh*] factors weighs in favor

of approval." *Id.* Nonetheless, the Settlement meets each of these factors, and thus, should be

approved.

    **B.**    **The Settlement Meets Each of the *Girsh* Factors**

        ***1.***    ***The Complexity, Expense, and Duration of Continued Litigation***

The first *Girsh* factor is whether the settlement avoids a lengthy, complex and expensive

continuation of litigation. "The first Girsh factor 'captures the probable costs, in both time and

money, of continued litigation.'" *In re Mushroom Direct Purchaser Antitrust Litig.*, 2018 U.S.

Dist. LEXIS 211488, at *21 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir.

2001) ("*Cendant II*"). In cases that "involve complex and protracted discovery, extensive trial

preparation, and difficult legal and factual issues, … this factor weigh[s] in favor of approval of

the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). This factor

undoubtedly weighs in favor of settlement.

Here, due to the factual and legal complexities involved in this case, continued litigation

would have been rigorously contested by all Parties, and would necessarily be expensive and

time-consuming. *See, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,

55 F.3d 768, 812 (3d Cir.1995) ("*GM Trucks*") (concluding that lengthy discovery and ardent

opposition from the defendant with "a plethora of pretrial motions" were facts favoring

settlements, which offer immediate benefits and avoid delay and expense). Indeed, at the time of

the Settlement, the Parties had litigated this case for more than seven years and engaged in extensive fact discovery, including those set forth above and at paragraph 9 of the Schwartz FA declaration. Despite all this work, much work remained, including fact depositions, expert discovery, motion practices with respect to class certification and summary judgment, potential appeals pursuant to Fed. R. Civ. P. 23(f), and pretrial and trial proceedings, plus potential appeals.

The complexity of this case is inherent to Plaintiffs' claims, which involve an analysis of Defendants' large database productions, insurance policies, Cigna's contracts and business dealings with ASH, and Defendants' billing practices. Such analyses would be the subject of a costly battle of the experts, and would require extensive expert discovery. Indeed, Plaintiffs retained and worked with several database experts, each of whom performed substantial work. This fact alone weighs in favor of settlement approval. *See Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010) (fact that trial would have required substantial expert testimony weighed in favor of approving settlement); *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 701 (W.D. Pa. 2015) (same).

Additionally, the risks of substantial delay are palpable. As described above, although the case has been vigorously litigated for seven years, substantial additional work would be required before the case would be ready to bring to trial. Trial would involve extensive pretrial motions involving complex questions of law and fact, and the trial itself would be lengthy and complicated. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) (finding the first *Girsh* factor to weigh in favor of settlement after three years of litigation). Post-trial motions and appeal would further delay resolution and increase costs. *Id*. at 536 ("it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class"); *In re Mushroom Direct Purchaser Antitrust*

*Litig.*, 2018 U.S. Dist. LEXIS 211488, at *22-23 (noting that additional costs associated with trial of multi-district class action and the delayed recovery for the class weighs in favor of settlement).

Under all of the circumstances, a certain result now, rather than an uncertain result more years in the future of this seven-year old litigation, weighs in favor of approval of the Settlement. For these reasons, the first *Girsh* factor weighs in favor of final approval of the Settlement

### 2. *The Reaction of the Class to the Settlement*

The second *Girsh* factor "attempts to gauge whether members of the class support the Settlement." *Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 318 (3d Cir. 1998) ("*Prudential II*"). In order to properly evaluate it, "the number and vociferousness of the objectors" must be examined. *GM Trucks*, 55 F.3d at 812. Unlike many other class actions, Defendants were able to provide AB Data with contact information for virtually all of the Settlement Class Members and therefore provide direct postcard notice of the key terms. The overall effectiveness of the notice program, the small number of opt outs, and the lack of objections to date[6] are strong indicators that the Settlement is fair, reasonable and adequate. *See, e.g.*, *Cendant II*, 264 F.3d at 234-35 (affirming trial court decision that class reaction was "extremely favorable," where 478,000 notices were sent, four objections were made, and 234 class members opted out).

Under *Girsh*, such a small number of exclusions and objections favor approval of a class action settlement agreement. *See, e.g.*, *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.15 (3d Cir. 1993) (silence is "tacit consent" to settlement). A "paucity of protestors … militates in favor of the settlement." *Id.* at 1314; *see also Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir.

---

[6] Consistent with the Preliminary Approval Order at 13, Class Counsel will address any objections that are subsequently submitted prior to the Final Approval Hearing.

1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 537 (D.N.J. 1997) ("*Prudential I*") (small number of negative responses to settlement favors approval); *Mercedes-Benz,* 899 F. Supp. at 1301 (100 objections out of 30,000 class members weighs in favor of settlement). Here, the absence of any meaningful negative response to the Settlement reflects overwhelming support from the Class and evinces the quality and value of the Settlement.

### 3.      *The Stage of the Proceedings*

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement. *GM Trucks,* 55 F.3d at 785; *Girsh,* 521 F.2d at 157. "This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner*, 2011 WL 1344745 at *12. "Through this lens … courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *GM Trucks,* 55 F.3d at 813.

Here, the Parties briefed multiple motions to dismiss, engaged in intensive negotiations over various document, data production, and other discovery issues in the Related Actions, including numerous telephone conferences and email exchanges, exchanged over 100 letters, and participated in numerous meet and confers regarding various disputes. Both Parties produced, and Plaintiffs have analyzed, more than 200,000 documents comprising more than 1.5 million pages, and information from multiple databases containing over 500 gigabytes of data. Further, the Parties enlisted the help of multiple database experts to sync the various Cigna and ASH databases in order to evaluate liability and damages issues. Simply put, this matter has been vigorously litigated for many years and, thus, there was no shortage of information and no rush to settlement here. This Settlement was reached after both sides endured the rigors of hard-fought motion practice, discovery and litigation.

### 4.      *The Risks of Establishing Liability*

This factor should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *Cendant II*, 264 F.3d at 237 (quoting *GM Trucks*, 55 F.3d at 814). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GM Trucks*, 55 F.3d at 814. "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *Wallace v. Powell*, 288 F.R.D. 347, 369 (M.D. Pa. 2012) (quoting *Prudential II*, 148 F.3d at 319).

Although Class Counsel believe that the claims presented in this litigation are meritorious, they are experienced counsel who understand that the "the risks surrounding a trial on the merits are always considerable." *Brown v. Am. Home Prods. Corp. (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*), No. 99-20593, 2000 U.S. Dist. LEXIS 12275, at *185 (E.D. Pa. Aug. 28, 2000). Class Counsel collectively have extensive experience litigating against Defendants Cigna and ASH and the firms representing Defendants, Kirkland & Ellis and Mayer Brown, and therefore were not surprised that Defendants, with the benefit of outstanding counsel, zealously defended against these claims, and would surely have continued to do so if the case proceeded to trial. The Settlement here presents the Class with real relief now. Further, although Plaintiffs are confident that their claims are legally sound, there is always the possibility that the Court may disagree. These risks include, among others, the potential denial of class certification, the granting of summary judgment, and loss at trial. Thus, these inherently unpredictable risks in establishing liability weigh in favor of settlement, particularly here, where the Settlement provides the Class with a substantial benefit that is fair, reasonable, and adequate.

### 5.     The Risks of Establishing Damages

"Like the fourth factor, 'this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *Cendant II*, 264 F.3d at 238. The court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential II*, 148 F.3d at 319. In *Warfarin Sodium I*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through 'a "battle of experts," with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'" *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004). Similarly, in *Cendant II*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239. The same is true here. Thus, this factor weighs in favor of final approval.

### 6.     The Risks of Maintaining the Class Action through Trial

Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action, *GM Trucks*, 55 F.3d at 817, the Court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. Class Counsel believe that this case is wholly appropriate for class certification in the litigation context. However, there is always a risk that a Court would find this action not suitable for class certification. Further, even if class certification were granted in the litigation context, class certification can always be reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative." *Skeen v. BMW of N. Am., Ltd. Liab. Co.*, No. 2:13-cv-1531-WHW-CLW, 2016 U.S. Dist. LEXIS

97188, at *52 (D.N.J. July 26, 2016). Finally, even if a class is certified, there is no sure bet that Plaintiffs would prevail at trial. In other words, class litigation is inherently uncertain and subject to many twists and turns. Experienced counsel know this and, consequently, this factor weighs in favor of final approval.

### 7.   *Defendants' Ability to Withstand Greater Judgment*

Although there is no dispute that Defendants have ample resources, countless settlements have been approved where a settling defendant has had the ability to pay greater amounts, and the Third Circuit has noted that this fact alone does not weigh against settlement approval. *See, e.g., Warfarin Sodium II*, 391 F.3d at 538. This factor is generally neutral when the Defendants' ability to pay greatly exceeds the potential liability, and was not a factor in settlement negotiations. *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig*., 269 F.R.D. 468, 489 (E.D. Pa. 2010) ("because ability to pay was not an issue in the settlement negotiations, this factor is neutral"); *Warfarin Sodium II*, 391 F.3d at 538 ("fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached").

### 8.   *Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation*

The final two *Girsh* factors are the reasonableness of the settlement in light of the best possible recovery, and all the attendant risks of litigation. These factors, too, support approval of this Settlement and its benefits. This Settlement offers real economic benefits to Settlement Class Members totaling $8.25 million. Settlement Class Members do not have to submit claims, but instead those who made out-of-pocket payments towards Administrative Fees will be automatically mailed checks to offset the financial responsibility they incurred for services from an ASH-contracted provider. Further, the Settlement requires Cigna to make reasonable efforts to

14

make changes to its policy templates for summary plan descriptions to add additional disclosure regarding the manner in which it calculates Plan benefits and Plan Member cost-sharing responsibility for entities such as ASH (the "Additional Disclosure"). Cigna will also make reasonable efforts to encourage self-funded Plans, which control their own plan documents, to add the Additional Disclosure to benefit booklets covering the Plan Members on a rolling basis as each contract for the administration of benefit claims for such Plans is renewed, replaced, or expires. Cigna will also make reasonable efforts to obtain regulatory approval to revise the insurance coverage policies for fully insured Plans to incorporate the Additional Disclosure on a rolling basis as each coverage contract is renewed, replaced, or expires.

Class Counsel collectively have extensive experience prosecuting class actions and have been successful in appropriate cases in securing judgments and settlements representing most of not all of the potential available damages. Schwartz FA Decl., ¶8. As reflected at https://www.zuckerman.com/people/d-brian-hufford (reflecting Mr. Hufford's extensive experience in ERISA class actions) and https://www.law360.com/articles/1121105/benefits-group-of-the-year-zuckerman-spaeder (reflecting that Law 360 chose Zuckerman Spaeder as 2018 Benefits Group of the Year), Class Counsel are well qualified to evaluate whether the Settlement represents a strong recovery based on the best potential recovery and the attendant risks of continued litigation. So too was mediator David Geronemus given his extensive experience. Based on their collective experience and the data produced by Defendants to date, Lead Class Counsel believe that the $8.25 million Settlement represents a near full-recovery of the amounts Settlement Class Members paid out-of-pocket for Administrative Fees. Schwartz FA Decl., ¶12. Given the substantial liability, class certification, and damages hurdles, Lead Counsel, with the input from mediator David Geronemus, believe the Settlement was in the best interests of the class. *Id.*, ¶¶ 16-17.

### C.      The Relevant *Prudential* and *Baby Products* Factors Also Support Settlement

The Third Circuit has articulated other factors that can be relevant to the evaluation of some, but not all, class settlements. In *Prudential II*, the Third Circuit identified several additional factors that "are illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *In re Pet Food*, 629 F.3d at 350. Those factors are the following:

> [1] [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; [2] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [3] whether class or subclass members are accorded the right to opt out of the settlement; [4] whether any provisions for attorneys' fees are reasonable; and [5] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323. Although not all of the *Prudential II* factors are relevant to approval of the proposed Settlement, those that are weigh in favor of final approval. First, the underlying substantive issues in this case are mature. As discussed above, there has been significant discovery on the merits and Class Counsel is aware of the complexity and risks inherent in a trial on the merits. Second, all individual Settlement Class Members are being treated fairly, and all will receive Settlement benefits automatically without having to take any action. Third, as discussed above, Settlement Class Members were provided with robust notice and were provided with the opportunity to opt-out. Fourth, the fees requested are reasonable, as more fully discussed in the Memorandum in Support of Plaintiffs' Motion for an Award of Attorneys' Fees to Class Counsel, Reimbursement of Class Counsel's Expenses, and Service Award to

Plaintiffs.[7]   Finally, the claims process essentially cannot be any simpler because Settlement Class Members who made out-of-pocket payments towards Administrative Fees will receive checks automatically without the need to fill out and submit claims forms.

Finally, the Third Circuit added an additional factor in *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013), in which it examined the degree to which a proposed settlement provided a "direct benefit" to the class. 708 F.3d at 174; *see also McDonough v. Toys R. Us, Inc.*, 80 F. Supp. 3d 626, 650-51 (E.D. Pa. 2015) (discussing "*Baby Products* factor"). Here, because all Settlement Class Members who made out-of-pocket payments towards Administrative Fees will automatically receive a check without having to fill out and submit a claim form, all Settlement Class Members receive a direct benefit from the Settlement. For all the foregoing reasons, the proposed Settlement satisfies the factors articulated by the Third Circuit and should be approved as fair, reasonable, and adequate.

## IV.   THE NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND FULLY IMPLEMENTED

To protect the rights of absent members of the Class, the Court must ensure that all Settlement Class Members who would be bound by a class settlement are provided the best practicable notice. *See* Fed. R. Civ. P. 23(e)(1)(B); *Phillips Petroleum Co. v. Schutts*, 472 U.S. 797, 811-12 (1985). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

---

[7] Because Class Counsel is not aware of other individuals, classes, or subclasses asserting similar claims against Defendants, Plaintiffs submit that the *Prudential II* factors calling for comparison to other such claimants is not relevant to the analysis of the proposed Settlement in this matter, other than to demonstrate, along with the minuscule number of opt outs, that class members could not achieve a better result via individual litigation.

306, 314 (1950). Both the content and the means of dissemination of the notice must satisfy the "best practicable notice" standard.

The notice of a class settlement should: define the class; describe clearly the options open to the class members and the deadlines for taking action; describe the essential terms of the proposed settlement; disclose any special benefits provided to the class representatives; provide information regarding attorneys' fees; indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement; explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations; provide information that will enable class members to calculate or at least estimate their individual recoveries; and prominently display the address and phone number of class counsel and the procedure for making inquiries. MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.312 (2004); *see also Cendant I*, 109 F. Supp. at 254. The form and manner of Notice was negotiated and agreed upon by the Parties, approved by this Court, and meets all of these requirements.

As detailed above and in the Schachter Declaration, the direct Notice program involved sending over 1.5 million postcards to virtually all Settlement Class Members. Schachter Decl., ¶¶ 5-9.   Notice of the proposed Settlement was also served on the Attorney General of the United States and to the appropriate State officials, the person in the State who has the primary regulatory or supervisory responsibility with respect to the defendant or who licenses or otherwise authorizes the defendant to conduct business in the State, of the states where Settlement Class Members reside, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. *Id*. The Settlement Administrator also published the Class Notice in the Wall Street Journal and through PR Newswire, established a national toll-free number, established a dedicated address,

18

and a Settlement Website featuring copies of the Class Notices, the Claim Form, the Settlement Agreement, relevant pleadings and other information relating to the terms and benefits of the Settlement. *Id*. Thus, the notice program that the Court initially and preliminarily approved was fully implemented and has informed the Class fully of their rights and benefits under the Settlement.

The direct mail notice provided the best notice practical under the circumstances, giving Settlement Class Members a full and fair opportunity to consider the terms of the Settlement and make a fully informed decision as to whether to participate, object, or opt-out of the Settlement. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (U.S. 1974) (noting that individual notice is preferred method where addresses of class members can be ascertained through reasonable effort); *Prudential I*, 962 F. Supp. at 527 (actual notice by mail and published notice was "ideal"). Therefore, the Notice fulfilled the requirements of due process and those of Rule 23(c)(2).

## V.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Class certification under Rule 23 has two primary components. First, the party seeking class certification must first establish the four requirements of Rule 23(a):

> (1) numerosity (a 'class [so large] that joinder of all members is impracticable');
> (2) commonality ('questions of law or fact common to the class'); (3) typicality
> (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy
> of representation (representatives 'will fairly and adequately protect the interests
> of the class').

*Warfarin Sodium II*, 391 F.3d at 527. Second, the Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b). *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 302 (3d Cir. 2005). In the present case, Plaintiffs seek certification under Rule 23(b)(3), "the customary vehicle for damage actions." *Id.* Rule 23(b)(3) requires that common questions "predominate over any questions

19

affecting only individual members" and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods. v. Windsor*, 521 U.S. 591, 639, 117 S. Ct. 2231, 2257 (1997).

As discussed in detail below, all the Rule 23 requirements are met here. The Court was correct in preliminarily certifying the Class for settlement purposes pursuant to Rules 23(a) and (b)(3), and nothing has changed to alter the propriety of the Court's certification. Therefore, the Class should now be finally certified for Settlement purposes.

A.      **The Rule 23(a) Factors Are Met**

As discussed below, in light of the proposed Settlement, Plaintiffs and the Class meet the requirements of Rule 23(a), which are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Warfarin Sodium II,* 391 F.3d at 527.

1.      *Numerosity*

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. *See, e.g.*, *Gillis v. Respond Power, LLC*, 677 F. App'x 752, 755 (3d Cir. 2017). For purposes of Rule 23(a)(1), "impracticable" does not mean impossible, "only that common sense suggests that it would be difficult or inconvenient to join all class members." *See Prudential I*, 962 F. Supp. at 510; *see also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (numerosity requirement satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40").

Here, the Settlement Class includes more than 1.5 million Settlement Class Members. Schachter Decl., ¶¶ 5-9.  Given the number and geographic distribution of the Settlement Class Members, joinder of all Settlement Class Members would be impracticable, and the proposed Settlement Class easily satisfies Rule 23's numerosity requirement for Settlement purposes. *Liberty*, 149 F.R.D. at 73.

### 2.    *Commonality*

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *Warfarin Sodium II*, 391 F.3d at 527-28. "Commonality does not require perfect identity of questions of law or fact among all class members. Rather, even a single common issue will do." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (internal quotation marks omitted). Here, the Settlement Class Members share many common issues of law and fact.

The commonality requirement is satisfied. Here, a single overarching common question—whether Defendants' Administrative Fee practice related to in-network services provided through ASH violated ERISA—cuts across every claim of every Settlement Class Member, who are all current or former Cigna insureds. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) ("[T]here may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant."). Accordingly, all Settlement Class Members share the same causes of action and suffered the same or similar harm and all are entitled to pursue their ERISA claims. Rule 23(a)(2)'s requirement of a common question of law or fact is satisfied for Settlement purposes.

### 3.    *Typicality*

In considering typicality under Rule 23(a)(3), the court must determine whether "the named plaintiffs['] individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Typicality does not require that all class members share identical claims. *Id.* So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the

defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001).

Typicality is readily established here for Settlement purposes. Plaintiffs in this action allege precisely the same ERISA claims, under the same legal theories for the same wrongful conduct as the other Settlement Class Members.

### 4.   *Adequacy*

The adequacy requirement has two components intended to ensure that the absent class members interests are protected: (a) the named plaintiffs' interests must be sufficiently aligned with the interests of the class, and (b) the plaintiffs' counsel must be qualified to represent the class. *GM Trucks*, 55 F.3d at 800. Here, the requirements for adequacy are satisfied for Settlement purposes.

As for the first component, the court must determine whether "the representatives' interests conflict with those of the class." *Johnston*, 265 F.3d at 185. There is no conflict between the proposed Class Representatives and the Class because, as with all members of the Class, Plaintiffs seek compensation for the same claims from the same Defendants. The Plaintiffs have no interests that are antagonistic to or in conflict with the Class they seek to represent and their alleged injuries are identical to those suffered by Settlement Class Members. *See Amchem*, 521 U.S. at 625-27 (courts look at whether the representatives' interest are in any way antagonistic to or in conflict with those of the class members).

Here, Class Counsel have substantial experience prosecuting large-scale class actions, including ERISA class actions against health insurers. *See* Schwartz FA Declaration ¶ 8and Zuckerman Spaeder website bios. Class Counsel deployed their experience in this case, which presented a wide range of substantive and procedural ERISA issues and class issues. Among other things, Class Counsel: (a) developed novel legal theories under ERISA to protect

22

Settlement Class Members' interests against allegedly faithless fiduciaries; (b) vigorously pursued those legal theories through complex motions practice, including opposing motions to dismiss in each of the actions and litigating cross-motions to compel discovery; (c) pursued substantial discovery, including voluminous document production and extensive correspondence regarding various disputes; and (d) successfully steered the putative class action to a favorable settlement. Throughout the litigation, Cigna and ASH vigorously opposed Plaintiffs at every turn. Accordingly, both prongs of the adequacy inquiry are satisfied.

### B.     The Rule 23(b)(3) Factors Are Met

In addition to meeting the requirements of Rule 23(a), the Class also must satisfy Rule 23(b)(3). The rule is satisfied here for Settlement purposes because questions of law or fact common to the Settlement Class Members predominate over any questions affecting only individual Settlement Class Members, especially in light of the proposed Settlement, which eliminates any individual issues, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

#### 1.     *Predominance*

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." As the Supreme Court explained in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer fraud …." 521 U.S. at 625. "Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)) (internal quotation marks and alterations omitted); *Community Bank,* 418 F.3d at 309 (predominance requirement satisfied where "[a]ll plaintiffs' claims arise from the same alleged fraudulent scheme"; "[t]he presence of

potential state or federal claims that were not asserted by the named plaintiffs does not defeat a finding of predominance").

The first prong of Rule 23(b)(3), predominance, is satisfied here for Settlement purposes as "questions of law or fact common to class members predominate over any questions affecting only individual members." *Skeway*, 304 F.R.D. at 475 (quoting FED. R. CIV. P. 23(b)(3)). As discussed earlier, Plaintiffs allege that each Settlement Class Member was subject to the Administrative Fee practice for in-network services provided through ASH, so for purposes of preliminary certification for settlement purposes, the claims of each similarly situated Settlement Class Member address the same issues of law and fact. Accordingly, the predominance requirement is satisfied.

### 2.   *Superiority*

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3). The superiority inquiry is simplified in the settlement context, because when certifying a settlement only class, the Court need not inquire whether the case, if tried, would pose intractable management problems, for the purpose of the settlement is to not have a trial. *Amchem*, 521 U.S. at 620. In making this analysis, the district court may take the proposed settlement into consideration. *Prudential II*, 148 F.3d at 308; *Warfarin Sodium II*, 391 F.3d at 529 ("When dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class.").

24

Here, a class action is the superior method of resolving the Settlement Class Members' claims. All of the Settlement Class Members' claims are based upon the same basic operative facts and legal standards. It would be a far better use of judicial resources to adjudicate all of these identical issues once, on a common basis, than repeatedly, literally thousands of times. Further, the Settlement provides Settlement Class Members the ability to obtain predictable, certain, and definite compensatory relief promptly and contains well-defined claim and administrative procedures to assure due process for each Settlement Class Member. By contrast, individualized litigation carries with it great uncertainty, risk, and costs, and provides no guaranty that injured Settlement Class Members will obtain necessary and timely compensatory relief at the conclusion of the litigation. Indeed, because of the expense of maintaining individual actions, denial of class certification here would effectively prevent certain individuals from asserting their claims against the Defendant. *See, e.g.*, *Phillips Petroleum Co. v. Schutts*, 472 U.S. 797, 809 (1985) (class action plaintiffs' claims are uneconomical to litigate individually).

## VI.    CONCLUSION

Because the Settlement that Plaintiffs reached with Defendants is fair, reasonable, and adequate, and because the Settlement Class meets all requirements of Rule 23(a) and 23(b)(3), Plaintiffs respectfully submit that certification of the class and final approval of the Settlement is warranted. A proposed Order is submitted herewith.

Dated:   June 10, 2019                          Respectfully submitted,

                                                /s/ *Steven A. Schwartz*
                                                Steven A. Schwartz (PA. I.D. No. 50579)
                                                Mark B. DeSanto (PA I.D. No. 320310)
                                                CHIMICLES SCHWARTZ KRINER &
                                                DONALDSON-SMITH LLP
                                                361 West Lancaster Avenue
                                                Haverford, PA 19041
                                                610.642.8500
                                                610.649.3633(fax)

                                                Jason M. Knott
                                                ZUCKERMAN SPAEDER LLP
                                                1800 M Street NW, Suite 1000
                                                Washington, DC 20036
                                                202.778.1813
                                                202.822.8106 (fax)

                                                D. Brian Hufford
                                                Jason S. Cowart
                                                Nell Z. Peyser
                                                ZUCKERMAN SPAEDER LLP
                                                485 Madison Avenue, 10th Floor
                                                New York, NY 10022
                                                212.704.9600
                                                212.704.4256 (fax)

                                                *Lead Counsel for Plaintiffs*